## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Rodney Othel McIntosh,          )
)
             Plaintiff,        )
)      Case No.   19 C 50322
             v.         )
)      Hon Iain D. Johnston
United States of America.       )
)
            Defendant.     )

## <u>MEMORANDUM OPINION AND ORDER</u>

In this *pro se* civil rights lawsuit brought under the Federal Tort Claims Act, Plaintiff Rodney McIntosh alleges he was assaulted and mentally tortured while housed in United States Penitentiary Thomson. Before the Court is Defendant's motion for summary judgment. Plaintiff has responded to the motion. For the reasons stated below, Defendant's motion is granted in part and denied in part.

### I.  Summary Judgement Standard

Under Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). A fact is material if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508

(7th Cir. 1992).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012).

Additionally, the failure to exhaust administrative remedies and the legal justification for a battery claim are affirmative defenses, which defendant bears the burden of proof. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). The defendant meets that burden only if they show that no dispute of material fact exists and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Furthermore, the Court construes the facts and inferences in the light most favorable to the nonmoving party. *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016). If the movant bears the burden of proof at trial, it must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party and must establish all elements of the claim or defense to warrant judgment as a matter of law. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). In that circumstance, the movant must come forward with evidence on each element that would require judgment as a matter of law if uncontroverted at trial. *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).

The Court's role is "to determine whether there is a genuine issue for trial," *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citations and quotations marks omitted), without "weigh[ing] evidence,

mak[ing] credibility determinations, resolv[ing] factual disputes and swearing contests, or decid[ing] which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Thus, in making that determination, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## II. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted.)

Local Rule 56.1(a) requires the moving party to provide "a statement of material facts" as to which the moving party contends there is no genuine issue for trial. LR 56.1(a); FED. R. CIV. P. 56(1). The opposing party must then "file a response to each numbered paragraph in the moving party's statement" of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (internal quotation marks omitted); LR 56.1(b), (e). In the case of any disagreement, the opposing party must reference "specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id*. The nonmoving party may also present a separate statement

3

of additional facts that require the denial of summary judgment that consists of "concise numbered paragraphs" "supported by citation to the specific evidentiary material, including the specific page number, that supports it." LR 56.1(b)(3), (d).

In this case, Defendant filed a LR 56.1 statement of material facts (Dk. 129) and memorandum of law (Dkt. 128). with their motion for summary judgment. Consistent with the local rules, Defendant also provided Plaintiff with a LR 56.2 Notice, which explains what LR 56.1 requires of a litigant opposing summary judgment. (Dkt. 127.)

Likewise, the Court explained in detail to Plaintiff summary judgment procedures and the requirements of Local Rule 56.1. Dkt. 125.

For his part, Plaintiff submitted a response to Defendant's LR 56.1 statement of facts (Dkt. 134.) In this response, Plaintiff includes several additional statements of fact that he contends are relevant to this case. (*See Id.*, pg. 20.) Plaintiff submitted his own declaration of which present his arguments in opposition to summary judgment. (*See Id.*, pg. 20.) In Plaintiff's declaration, he primarily disputes issues of fact relating to allegations that he spit and assaulted correctional officers, and that the surveillance video was edited. (*See Id.*, pg. 5, 9.) Whether Plaintiff spit and assaulted correctional officers is subject to the *Heck* analysis below. Further, the Court has reviewed all video surveillance in their entirety and has observed no time lapses or indications that the videos were altered in any way. Plaintiff's speculation, not based on any admissible evidence, that the video recordings were altered is not sufficient to prevent summary judgment. *See Hamer v. Neighborhood Hous. Servs.*, 897 F.3d 835, 841 (7th Cir. 2018); *Austin v. Walgreen Co.*, 885 F.3d 1085, 1089 (7th Cir. 2018) ("Speculation does not defeat summary judgment."). And, critically, in his deposition, Plaintiff repeatedly admitted the accuracy of the video recordings, an

4

admission he cannot abandon now. *See James v. Hale*, 959 F.3d 307, 315-16 (7th Cir. 2020) (discussing sham-affidavit rule).

With the guidelines above in mind, the Court turns to the facts of this case, stating those facts as favorably to Plaintiffs as the record and LR 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).

### III. Relevant Facts

At all relevant times, Plaintiff Rodney McIntosh was an inmate in the custody of the United States Penitentiary Thomson in the special management unit ("SMU"). (Dkt. 129, Defendant's Statement of Facts ("DSOF"), ¶¶ 1,6.) The SMU is the Bureau of Prison's program for high security inmates who have a history of serious or disruptive disciplinary infractions, and the environment in the SMU is more restrictive than in general population housing. (DSOF, ¶¶ 6,7.) Plaintiff, admittedly, has been disciplined for threatening a staff member and assaulting or attempting to assault a staff member "a lot," fighting with another inmate "maybe 50 times or half of that," possessing a weapon four times, and manipulating restraints while in Bureau of Prison custody. (DSOF, ¶ 4.) Inmates routinely change cells and, in doing so, are instructed to standstill for a pat-down search before being escorted to their new cells. (DSOF, ¶ 8.)  At the time of the events at issue in this lawsuit, Lt. Brian Damm, Lt. Dennis Murton, Ofc. Kyle Maybury, Ofc. Eric Wolf, Ofc. Timothy Kirkpatrick, and Ofc. James Sturgill, and Lt. Randall Erskine all were correctional officers in the SMU. (DSOF, ¶¶ 2, 4, 5.)

On June 17, 2019, Plaintiff was informed by Lt. Damm that he and his cellmate would be changing cells to keep Plaintiff's cellmate separate from another inmate. (DSOF, ¶ 9; *see also* Dkt.

130, Plaintiff's May 3, 2021 Deposition ("Pl. Dep."), pg. 65: 157, 66: 159-160.) Officer Maybury removed Plaintiff from his cell and placed him on the wall for a pat-down search before being escorted to a new cell. (See Dkt. 131, Exhibit 2, Attachment 1(a), 6:55:10 p.m.) During the search, Plaintiff was given verbal commands to keep his body and head facing the wall while being searched. (DSOF, ¶ 15.) Plaintiff did not comply with Ofc. Maybury's verbal commands. (DSOF, ¶ 16.)  During the search, Plaintiff moved his head sideways, away from the wall, and began to speaking back to Ofc. Maybury against the officer's instruction. (DSOF, ¶ 14.) Ofc. Maybury placed Plaintiff on the ground using a sweeping motion with his leg to prevent Plaintiff from injuring Ofc. Maybury and other staff members. (DSOF, ¶ 19.) Ofc. Maybury and other officers attempted to restrain Plaintiff after Plaintiff was taken to the ground. (DSOF, ¶ 21; Dkt. 131, Attachment A, TOM_001- 000146-000147) Plaintiff subsequently spit on Ofc. Maybury's arm as Ofc. Maybury moved to restrain Plaintiff's upper body. (DSOF, ¶ 22.) Officers then attempted to escort Plaintiff to another cell. Plaintiff was made to walk backward toward his next cell. During the escort, Plaintiff stopped walking and pulled down away from staff, and subsequently was taken to the ground again by staff. (DSOF, ¶ 27.) Plaintiff was then placed on a gurney so he could be escorted to the restraint cell. (DSOF ¶ 28; Dkt. 131, Exhibit 2, Attachment 1(d), 02:00.) While on the gurney, Plaintiff spit at staff so a shield was placed over Plaintiff face to protect staff. (DSOF ¶ 29.) While Plaintiff was being placed in ambulatory restraints (a belly chain), Plaintiff was yelling, referring to staff as "white devils," and resisted despite verbal commands from staff. (DSOF ¶ 29; Dkt. 131 Exhibit 2, Attachment 1(d), 04:00-12:15.)

Staff arrived at the new cell and told Plaintiff that they were going to place him on the bed so they could exit the cell and instructed him to remain on the bed until they exited. (DSOF ¶ 32;

Dkt. 131 Exhibit 2, Attachment 1(d), 12:15.) Before the staff members were able to exit the cell, Plaintiff moved towards staff. Plaintiff was then placed in four-point restraints. (DSOF ¶ 33.)

Miranda Bergmann, R.N., assessed Plaintiff's left thumb at 8:20 p.m. on June 17, 2019. She observed Plaintiff make a fist with his left hand and displayed full and normal range of motion to the left hand and thumb. (DSOF ¶ 42.)

Plaintiff was placed in restraints from June 17, 2019, at 7:30 p.m., to June 18, 2019, at 7:15 p.m. (DSOF ¶ 48.) During that time, correctional staff assessed Plaintiff every fifteen minutes and logged their observations, a lieutenant assessed Plaintiff every two hours and logged his observations, psychology staff assessed the Plaintiff every twenty-four hours, and health services staff checked the restraints on Plaintiff twice every eight-hour shift. (DSOF ¶ 47.) Plaintiff alleges that on June 18, 2019, at about 7:00 a.m., Lt. Dennis Murton hit Plaintiff's lower extremities with a stick while Plaintiff was in restraints. (Dkt. 31, pg. 3; DSOF ¶ 49.) Plaintiff was released from restraints once Lt. Damm determined that Plaintiff was finally calm enough for the restraints to be removed. (DSOF ¶ 48.) Sheila McCrea, Psy.D., also assessed Plaintiff and concluded that Plaintiff's mental health condition did not deteriorate while he was in restraints. (Dkt. 132.; Exhibit 8, ¶ 28; Declaration of Sheila McCrea, Psy.D., Exhibit 13, ¶¶ 8, 10.)

Plaintiff was issued three incident reports for his behavior on June 17, 2019, and June 18, 2019. (Dkt. 132.) Two incident reports were issued to Plaintiff by Ofc. Maybury and Ofc. Wolf alleging that Plaintiff threatened and spit on them on June 17, 2019. (Dkt. 132.) Ofc. Maybury's incident report also alleged that Plaintiff made the following threats to Ofc. Maybury during the pat-down search: "You're a cracker faggot, and I am going to spit in your bitch ass face if you take me to another cell." (DSOF ¶ 60.) The incident report issued by Ofc. Wolf was expunged because

the disciplinary hearing officer felt it was duplicative of Ofc. Maybury's incident report. A disciplinary hearing concerning Ofc. Maybury's incident report took place on August 8, 2019, before disciplinary hearing officer (DHO) Lynn Lyons. (Dkt. 132.) DHO Lyons issued a decision finding Plaintiff guilty of threatening bodily injury and assault. (Dkt. 132.)

The third incident report was issued by Lt. James Sturgill because Plaintiff threatened Lt. Sturgill and Lt. Sturgill's family on June 18, 2019, while Plaintiff was in restraints. Specifically, Plaintiff said, "I'm gonna kill all your white devil families, you fucking white devils, I promise when I get out I'll hunt you down and rape your kids, your wives, and you can watch as I kill them." (Dkt. 132.) A disciplinary hearing concerning the incident report issued by Lt. Sturgill was held on July 16, 2019, and Plaintiff was found guilty. (Dkt. 132.)

Plaintiff filed this lawsuit on December 2, 2019. (*See* Dkt. 1, pg. 1.) The Court dismissed the initial complaint without prejudice and with leave to amend because it contained misjoined claims. (Dkt. 13.) Plaintiff was granted several extensions of time to submit the amended complaint. (Dkts. 14- 16, 18, 20.) On June 19, 2020, Plaintiff submitted a document captioned "motion of compliance" (Dkt. 25) In a July 28, 2020 order, Plaintiff's complaint was reinstated, and he was allowed to proceed on his claims, because the alleged facts could potentially support a claim that the manner in which Plaintiff was roughly handled by correctional officers during the June 17/18, 2019 incident arguably stated a cognizable claim against the United States under the FTCA.   (*See* Dkt. 30, pg. 2.) Plaintiff also includes a battery and mental torture claim based on Lt. Erskine's conduct on June 18, 2019, including an allegation that Lt. Erskine told Plaintiff "you know this is your fault," and "once you admit that we'll talk about your four points." (DSOF, ¶ 52.)

8

## IV.   Analysis

Given these facts, Defendant now moves for summary judgment for these reasons:

1.  Plaintiff's argument that he did not spit on or threaten officers should be barred under *Heck*;

2.  The officers used appropriate levels of force in dealing with Plaintiff's actions;

3.  Plaintiff's battery claim is barred by Illinois's Federal Law Enforcement Officer Immunity Act, 745 ILCS 22/10;

4.  Plaintiff's failed to exhaust his administrative remedies before filing suit; and

5.  Plaintiff's injury was *de minimis.*

### A.  Plaintiff's Argument is *Heck*-Barred.

Defendant claims that Plaintiff is barred from arguing that he did not threaten or spit on staff, because Plaintiff has been found guilty of having committed these infractions and that decision has not been reversed.

In *Heck v. Humphrey*, the Supreme Court held that a § 1983 action for damages is unavailable if success would necessarily imply that a conviction or sentence is invalid unless the underlying conviction or sentence has been reversed on direct appeal, expunged by executive order, or declared invalid on habeas review. 512 U.S. 477, 486-87 (1994).   *Heck* applies to FTCA claims.   *Erlin v. United States*, 364 F.3d 1127, 1132 (9th Cir. 2004); *Parris v. United States*, 45 F.3d 383, 385 (10th Cir. 1995). A "conviction" for purposes of *Heck* includes a prison disciplinary decision that results in the loss of good time credit. *Edwards v. Balisok*, 520 U.S. 641 (1997). When considering if *Heck* bars Plaintiff's excessive force claim, the Court "must consider the factual basis of the claim and determine whether it necessarily implies the invalidity of [the plaintiff's] conviction." *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014).

The Court's analysis of the factual basis for the claim is not limited to "the formalistic language in the original [criminal] complaint" but is more expansive, including the factual basis for the conviction. *Viramontes v. City of Chicago*, 840 F.3d 423, 428 (7th Cir. 2016) ("In fact, at no point has our focus been on the words used in the actual criminal or disciplinary complaint.") (citations omitted). Plaintiff denies spitting or threatening officers and contends that officers initiated all force against him while he was being transported from one cell to the next. Defendant argues that Plaintiff's contention that he never spit on or threatened officers directly conflicts with his disciplinary decisions therefore barring him from making those assertions. The Court agrees.

Officer Maybury issued an incident report alleging that Plaintiff threatened and assaulted staff on June 17/18, 2019. (DSOF, ¶ 58.) Ofc. Maybury's incident report alleged that Plaintiff made the following threats to Ofc. Maybury during the pat-down search: "You're a cracker faggot, and I am going to spit in your bitch ass face if you take me to another cell." (DSOF ¶ 60.) The incident report further alleged that Plaintiff assaulted staff in the following ways: Plaintiff continued to turn towards Ofc. Maybury aggressively and attempted to break Ofc. Maybury's escort grip despite verbal commands to keep his body and head facing forward; Plaintiff spit on Ofc. Maybury's arms while Ofc. Maybury was trying to maintain control of Plaintiff's head after Plaintiff was brought to the ground; Plaintiff continued to spit on staff throughout the duration of the use of force and escort; Plaintiff lunged down away from staff when staff were attempting to escort Plaintiff to another cell; Plaintiff spit on staff during the application of ambulatory restraints; and Plaintiff lunged at staff as they were attempting to exit the restraint cell. A disciplinary hearing concerning the incident report was held, and Plaintiff was found guilty of threatening bodily injury and assault resulting in loss of good time. Exhibit 7, ¶ 7.

10

Lieutenant Sturgill also issued an incident report for the same occurrence of events of June 17/18, 2019. Specifically, the report stated Plaintiff threatened Lt. Sturgill on June 18 yelling, "I'm gonna kill all your white devil families, you fucking white devils, I promise when I get out I'll hunt you down and rape your kids, your wives, and you can watch as I kill them." Exhibit 9, ¶ 8. A disciplinary hearing concerning the incident report issued by Lt. Sturgill was held on July 16, 2019. Plaintiff was found guilty. Exhibit 9, ¶ 8.

The factual basis for Plaintiff being found guilty at the disciplinary hearings, in fact, establishes that Plaintiff spit and threatened correctional officers multiple while they attempted to restrain and bring him under control. In opposition, Plaintiff espouses a version of events that paints him as a helpless and blameless innocent victim brutalized by officers. This depiction is irreconcilably inconsistent with audio and video taken during the altercation depicting Plaintiff's disregard for following prison guidelines when being transferred from one cell to the next. Nevertheless, his convictions for threatening bodily injury and assault bar his ability to argue he did not threaten or spit on officers. *See Moore*, 652 F.3d at 724-25 (explaining that implicit denial of facts related to underlying offense includes plaintiff portraying himself "as a lamb—the victim of a gratuitous, brutal attack," to "strengthen [his] claim of excessive force" and warrants dismissal without prejudice under *Heck*).

Accordingly, Plaintiff is barred from arguing that he did not threaten or spit on officers on June 17 of 2019, because Plaintiff has been found guilty of having committed these infractions and that decision has not been reversed.

**B. June 17, 2019 Battery Claim**

In moving for summary judgment, Defendant argues that the force used to subdue Plaintiff on June 17, 2019, was reasonable under the circumstances.[1]

To successfully sue under the FTCA, a claim must be: (1) against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the federal government; (5) while acting within the scope of his or her employment; and, (6) under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the state law where the act or omission occurred. 28 U.S.C. § 1346(b*); FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994).

Here, the wrongful act Plaintiff alleges is battery under Illinois law. A civil battery involves contact by a defendant that is unauthorized (*Boyd v. City of Chicago,* 378 Ill.App.3d 57, 69, 317 Ill. Dec. 41, 880 N.E.2d 1033 (2007)), in which a defendant has done some affirmative act intended to cause the unpermitted contact (*see McNeil v. Carter,* 318 Ill. App. 3d 939, 944, 252 Ill. Dec. 413, 742 N.E. 2d 1277 (2001); *Gaskin v. Goldwasser,* 166 Ill. App. 3d 996, 1012–13, 117 Ill. Dec. 734, 520 N.E. 2d 1085 (1988)). Battery requires more than an intent to contact, in that a defendant must intend to cause a harmful or offensive contact. *See Happel v. Wal–Mart Stores, Inc.,* 316 Ill. App. 3d 621, 630, 250 Ill. Dec. 28, 737 N.E. 2d 650 (2000); *Welch v. Ro–Mark, Inc.,* 79 Ill. App. 3d 652, 658, 34 Ill. Dec. 910, 398 N.E. 2d 901 (1979). Intent is established by either an intent to touch or an intent to harm or offend by the touch. *Curtis v. Jaskey,* 759 N.E. 2d 962, 964 (Ill. App. Ct. 2001). The existence of a legal justification for a civil battery is not an element of the

---

[1] In moving for summary judgment on this claim, Defendant relies on Illinois Court of Claims decisions. But those decisions have no precedential value, even in Illinois courts. *Lohan v. Walgreen Co.*, 488 N.E. 2d 679, 681 (Ill. App. Ct. 1986).

12

offense, but rather is an affirmative defense. *See McBride v. Grice*, 576 F. 3d 703, 707 (7th Cir. 2009); *People v. Meor,* 233 Ill. 2d 465, 331 Ill. Dec. 166, 169–70, 910 N.E. 2d 575, 578–79 (2009); *Simmons v. Pryor*, 26 F. 3d 650 (7th Cir. 1993) (citing Illinois law).

Here, the correctional officers clearly made physical contact with Plaintiff. Thus, the question before the Court is whether they were legally justified in doing so.

The Bureau of Prisons Program Statement 5566.062 and 28 C.F.R. § 552.21(a) generally authorize an immediate use of force and restraints to gain control of an inmate when the inmate's conduct constitutes an immediate, serious threat to the inmate, staff, others, property, or to institution security and order. Staff must use only that amount of force necessary to gain control of the inmate. 28 C.F.R. § 552.20.

Here, Plaintiff claims that correctional officers battered him when they intentionally slammed Plaintiff on the ground and began striking him in his face and legs without legal justification. However, the undisputed facts—including the video evidence and facts uncontestable under *Heck*—do not support the claim. *See Scott v. Harris*, 550 U.S. 372, 381, 127 S. Ct. 1769, 1776 (2007) (holding that where there is video evidence in a case, the court should view the facts in the light depicted by the videotape."); *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016).

The video surveillance footage and undisputed facts show that Ofc. Maybury removed Plaintiff from his cell and placed him on the wall for a pat-down search before being escorted to a new cell. During the pat-down search, Plaintiff was given verbal commands to keep his body and head facing the wall, which he failed to do. Plaintiff continued to speak back towards Ofc. Maybury in an aggressive manner inhibiting Ofc. Maybury's search. Plaintiff, admittedly, has been previously disciplined for assaulting prison staff members, possessing a weapon on four occasions,

13

and manipulating restraints while in Bureau of Prisons custody. Those factors, in conjunction with Plaintiff's failure to comply with orders, resulted in Plaintiff being taken to the ground by Ofc. Maybury who used a sweeping motion with his leg to restrain Plaintiff. Plaintiff subsequently spit on Ofc. Maybury's arm as Ofc. Maybury moved to restrain Plaintiff's upper body. Ofc. Maybury struck Plaintiff's leg to gain compliance, and fellow officers can also be seen placing a shield over Plaintiff's face to prevent Plaintiff from spitting on them further. Once Plaintiff was taken to his new cell, he was placed in four-point restraints.

Considering Plaintiff's refusal to comply with the correctional officer's orders, the seriousness and imminent threat of Plaintiff spitting on and threatening officers, and Plaintiff's history of assaulting officers and defeating restraints, the Court concludes that no reasonable jury could find the correctional staffs' use of force was unreasonable. The Court finds Defendant's conduct in restraining and transferring Plaintiff from one cell to the next on June 17, 2019 to be reasonable and legally justified, and that no reasonable jury could find to the contrary.

Defendant argues in the alternative, Plaintiff's claims are barred by the Federal Law Enforcement Officer Immunity Act, 745 ILCS 22/10, in that the correctional officers' conduct did not rise to the level of willful or wanton conduct as required by law.

The Federal Law Enforcement Officer Immunity Act provides, "A federal law enforcement officer, while acting as a peace officer under Section 2-13 of the Criminal Code of 2012, is not liable for his or her act or omission in the execution or enforcement of any law unless the act or omission constitutes willful and wanton conduct." 745 ILCS 22/10.

The Act defines federal law enforcement officers as any officer, agent, or employee of the federal government commissioned by federal statute to make arrests for violations of federal

criminal laws. *See* 745 ILCS 22/5. Here, the corrections officers fall into the category of federal law enforcement officers as defined by 745 ILCS 22/5. The corrections officers were engaged in the "execution or enforcement of any law"—namely 28 C.F.R. § 552.21(a) and Bureau of Prisons Program Statement 5566.06. Additionally, though they were not presently making an arrest, they were authorized to do so on Bureau of Prisons premises.18 U.S.C. § 3050. The Court agrees with Defendant that the conduct at issue comes within the purview of Section 22/10.

The Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." Further, "this definition shall apply in any case where a "willful and wanton" exception is incorporated into any immunity under this Act." 745 ILCS 10/1-210.

Defendant may rely on the Act because the FTCA provides for liability "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C.§ 1346 (b)(1)*; FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994); *Davis v. United States,* No. 98 C 6251, 2000 WL 28272, at *2 (N.D. Ill. Jan. 6, 2000) (holding that defendant was protected under Illinois immunity law as it applies to claims brought under the FTCA that related to actions of federal law enforcement agents, including a battery claim).

Although it is generally a fact question whether conduct is willful and wanton, the issue may be resolved on summary judgment if the facts are insufficient as a matter of law to support a claim. *See Smith v. City of Chi.,* 242 F.3d 737, 744 (7th Cir.2001) (holding that pulling suspect from car, slamming him against it, and aggressively handcuffing him was not willful and wanton

conduct); s*ee also Guidry v. Boyd,* 06 C 1600, 2007 WL 2317174 (N.D. Ill. July 17, 2007) ("a triable assault and battery claim might be adduced relating to a handcuffing, in this case [however], there is no basis by which a jury could find willful and wanton misconduct by the officers."). Video evidence may allow a court to make this determination as a matter of law. *See Griffin v. Hardick*, 604 F.3d 949, 955-56 (6th Cir. 2010); *Kraus v. Martin Cty. Sheriff's Office*, 2:16-cv-14476, 2017 U.S. Dist. LEXIS 158923, *18 (S.D. Fla. Sep. 26, 2017); *Fragola v. City of St. Paul*, Civil No. 10-4718, 2012 U.S. Dist. LEXIS 1541, *22-23 (D. Minn. Jan. 5, 2012); *see generally Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018).

Here, correctional officers removed Plaintiff from his cell to be pat-down searched in preparation of being taken to another cell. Ofc. Maybury gave Plaintiff several verbal commands to keep his body and head facing the wall while being searched, yet Plaintiff refused to do so during this occurrence. In response to this repeated refusal, Ofc. Maybury and several other officers took Plaintiff to the ground on two separate occasions. There are no facts relating to the June 17, 2019 incident that suggest the correctional officers displayed deliberate intention to cause harm to Plaintiff. Contrarily, throughout this incident, Plaintiff spit on correctional officers and made verbal threats towards them. The undisputed facts show the correctional officers used immediate force to restrain and gain control of Plaintiff to effectuate transporting Plaintiff from one cell to the next. Use of force was required to safely do so while Plaintiff spit on and verbally assaulted the correctional officers. The undisputed evidence—including the video evidence and evidence required to be accepted under *Heck*—establishes that the correctional officers' use of force did not rise to the level of willful and wanton, and no reasonable jury could find to the contrary.

**C. June 18, 2019 Claims**

Defendant argues that Plaintiff's mental torture claim from June 18, 2019, should be dismissed based upon Plaintiff's failure to exhaust his administrative remedies, in that he failed to name Ofc. Erskine in his SF-95.

Before Plaintiff may bring an FTCA claim, he must "have first presented the claim to the appropriate Federal agency" and received a final written denial from that agency. 28 U.S.C. § 2675(a). A claimant "presents" his claim by submitting an executed SF-95. 28 C.F.R. § 14.2(a). "No one may file suit under the Federal Tort Claims Act without first making an administrative claim." *Kanar v. United States*, 118 F.3d 527, 528 (7th Cir. 1997). Corresponding agencies in all tort cases must, at the very least, be apprised of the location and approximate date of the incident. *Panko v. United States*, No. 86 C 0009, 1986 WL 11376, at *1 (N.D. Ill. Oct. 9, 1986). The *Panko* Court acknowledged that some tort cases may require additional information, but that it necessarily varies. *Id.* (finding plaintiff's failure to provide either the exact time of the incident or the name or a description of the building guard was not fatal to his claim).

In this case, Plaintiff's SF-95 form gave the date and location of the incidents alleged. Irrespective of Plaintiffs failure to identify Ofc. Erskine by name, Plaintiff's form identified the specific date and events about which he was complaining, and it also identified most of the officers who were involved in those events. (*See* Dkt. 1, pg. 23-28.) In denying Plaintiff's grievance, the Office of the Regional Counsel found that Plaintiff claims did not reveal he suffered any personal injury as a result of the negligent acts or omissions of Bureau of Prisons employees acting within the scope of their employment. (Dkt. 1, pg. 28.)  The Office of Regional Counsel never asserted that there was insufficient evidence to evaluate the grievance.  Alone, this is sufficient to deny the

motion.  *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) ("Where prison official address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action and defendants cannot rely on the failure to exhaust defense.").

     Moreover, the Court finds that Plaintiff's form satisfied the FTCA requirement that the form includes sufficient information to put jail officials on notice regarding the nature of Plaintiff's complaint. SMU undoubtedly maintains personnel records as to who is stationed when and where. Consequently, the Court holds that no reasonable jury could find that Plaintiff failed to exhaust all remedies before filing suit. *See Panko*, supra.

     As to Plaintiff's battery claim, Plaintiff alleges that on June 18, 2019, while in restraints, Lt. Murton hit Plaintiff on his legs with a stick for no reason and without provocation – Lt. Murton denies he struck Plaintiff.   Unlike the incident the previous day, no video evidence exists as to this incident. The Court finds a genuine dispute of material fact exists as to whether Lt. Murton struck Plaintiff, and whether the conduct was willful and wanton.

     Plaintiff also alleges a mental torture claim for Defendant's conduct that occurred on June 18, 2019. The Court construes this claim as an r intentional infliction of emotional distress (IIED) claim. Defendant contends that judgment should nevertheless be entered in favor of the United States. Defendant contends that the statements Lt. Erskine allegedly directed toward Plaintiff were not extreme and outrageous. (Dkt. 128, pg. 18.)   But Defendant fails to address Plaintiff's claim that Lt. Murton gratuitously struck Plaintiff's leg with a stick.

     Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress only if he establishes that (1) the defendant's conduct was extreme and outrageous; (2) the

defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress; and (3) the defendant's conduct did cause severe emotional distress. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir. 1993).

Conduct is extreme and outrageous only if "the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* at 702-03. An objective standard is used in determining whether conduct is extreme and outrageous. *Id.* at 703. Mere insults, indignities or threats are not actionable. *See Pub. Fin. Corp. v. Davis,* 66 Ill. 2d 85, 4 Ill. Dec. 652, 360 N.E. 2d 765, 767–68 (1976). Additionally, the resultant emotional distress must be so severe that no reasonable person could be expected to endure it, considering the intensity and the duration of the distress. *See McGrath v. Fahey,* 126 Ill. 2d 78, 127 Ill. Dec. 724, 533 N.E. 2d 806, 806 (1988); *see also Kleidon v. Rizza Chevrolet, Inc.,* 173 Ill. App. 3d 116, 122 Ill. Dec. 876, 527 N.E. 2d 374, 377 (Ill. App. Ct. 1988) ("Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable.").

In *Swanigan v. Trotter*, 645 F. Supp. 2d 656, 685 (N.D. Ill. 2009), plaintiff claimed that he experienced emotional distress because officers told him to "sit in his urine" when they discovered that he had urinated on the floor of his cell. The court found officers statements amounted to mere indignities that were not actionable because the officers did not engage in conduct that goes beyond the bounds of decency. *Id.* (finding that even if the comments that officers made to plaintiff regarding the urination constituted extreme and outrageous behavior, nothing in the record

19

indicates that the statements caused plaintiff to experience the type of severe emotional distress that no reasonable person could endure).

Plaintiff's IIED claim, however, is based on more than simply "mere indignities" and other verbal conduct. First, Plaintiff's IIED claim arises out of events that occurred on June 18, 2019 where he was in four-point restraints for approximately 24 hours. Secondly, Plaintiff alleges that during that time period of restraint, Lt. Murton struck him in the legs with a stick. Lastly, Plaintiff alleges that, while still held in the four-point restraints, Lt. Erskine told him "you know this is your fault," and "once you admit that we'll talk about your four points." (Dkt. 31, pg. 3; DSOF ¶ 52.) These actions taken separately may not rise to the level of outrageous and extreme. But, in assessing them all together, the Court cannot conclude that no reasonable jury could not find this conduct to be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency. Summary judgment is denied with regard to this claim.

Lastly, as to the June 18 claims, Defendant argues they should be dismissed because Plaintiff did not sustain a physical injury.

The PLRA provides, in relevant part that "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 28 U.S.C. ¶ 1997e(e). The plain language of the statute indicates that this provision applies to any "Federal civil action;" thus, the provision is applicable not only to constitutional torts, but also violations of federal statutes. *See e.g., Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008) (applying Section 1997e to claim under the RLUIPA); *United States v. Shaaban*, 602 F.3d 877, 879 (7th Cir. 2010) (PLRA applicable to

20

federal civil equitable proceeding). Plaintiff's FTCA claims constitute a Federal civil action; thus, Section 1997e(e) applies.

Importantly, the application of 1997e(e) to Plaintiff's claim does not mandate judgment in Defendant's favor. Although Section 1997e(e) limits damages for mental and emotion injury, Plaintiff may still seek and be awarded other damages, *i.e.*, nominal damages. *See Smith v. Peters,* 631 F.3d 418, 421 (7th Cir.2011).   Section 1997e(e) bars an award of damages for emotional or mental injury; it does not bar the filing of the action. *Calhoun v. DeTella,* 319 F.3d 936, 940–42 (7th Cir. 2003); *Robinson v. Page,* 170 F.3d 747, 748 (7th Cir. 1999).   So, even if the alleged physical injury may be determined to be *de minimis,* as argued by Defendant, Plaintiff may still recover nominal damages and still proceed with this action.

## V.   Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [126] is granted in part and denied in part. Summary judgment is granted on Plaintiff's battery claim based on Defendant's conduct in transporting Plaintiff to his new cell on June 17, 2019. Summary judgment is denied on Plaintiff's battery and IIED claims arising from June 18, 2019.

Date:   April 12, 2022               By:

IAIN D. JOHNSTON
United States District Judge